IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LONGVIEW HILLS MHC, LLC**, an Oregon limited liability company,<br><br>            Plaintiff,<br><br>    v.<br><br>CITY OF NEWPORT, an Oregon municipal corporation,<br><br>            Defendant. | Case No. 6:20-cv-00892-MC<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

MCSHANE, Judge:

      Plaintiff Longview Hills MHC owns a manufactured home park in Newport, Oregon. For the past thirty years, Defendant City of Newport has directly billed each individual tenant for their water usage. In March 2019, the City informed Plaintiff of their intent to install a master meter on the outskirts of the Park and to bill Plaintiff for the Park's entire water usage. Plaintiff asks the Court to declare that the City's master meter plan is a violation of the Contract Clause of

1 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

the United States Constitution and the Contract Clause of the Oregon Constitution. Plaintiff also asks the Court to declare that the City owns – and is responsible for maintaining – certain water lines within the Park. For the reasons that follow, the Court finds that the water lines within the park limits are owned by Plaintiff. The Court also concludes that the City's master meter plan does not violate either Contract Clause. Below are the Court's findings of fact and conclusions of law. Fed. R. Civ. P. 52(a).

## FACTUAL FINDINGS

Plaintiff's predecessor-in-interest[1] began planning for the Park in 1988. Ex. 201. During the planning process, the Park requested that the roads within the planned development remain private. Ex. 201 at 19, 41. The Park also requested "that the water and sewer service within the subdivision remain private." Ex. 201 at 41. It is undisputed that the Park paid for and installed the water lines within the park limits.

However, Plaintiff argues that the "plan from the beginning" was for ownership to transfer to the City at some later point. Plaintiff relies on a June 8, 1990 letter from the City asking the water and sewer line designer to inspect the projects, per City Ordinance No. 1329. Ex. 9 at 1. City Ordinance No. 1329 allows developers of a subdivision to use private engineers to design improvements, such as water and sewer lines. *Id.* at 2. When these improvements are public improvements or "improvements which may reasonably be expected to be transferred to the City of Newport," the private engineer must inspect the improvements. *Id.* Plaintiff argues that this single letter shows clear intent from the City to take ownership of the lines at some point in the future.

---

[1] HCA Management has owned and operated Longview Hills MHC, LLC since 2016.

2 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

However, even if the intent in 1990 was for ownership of the water lines to eventually transfer to the City, it is clear from later negotiations that Plaintiff maintained ownership of the lines. In 1991, the Park and the City engaged in negotiations for an easement for the City to "operate, repair, maintain and remove" any underground water or sewer lines within the park. Ex. 10 at 3. During negotiations, the City expressed concern that the easement would not allow them to "extend a line in the future which would serve both Longview Hills and other property not owned by Longview Hills." Ex. 10 at 2. The City also expressed concern that the easement would require them to assume responsibility for any sewer lines under buildings. *Id.*

By 1993, the City and the Park still had not agreed on an easement. Ex. 11. A City letter of March 19, 1993 to the Department of Environmental Quality reiterates their position: "This development is occurring on private property and in private streets. Both the water and sewer lines are private; however the property owner has granted water and sewer easements to the City so we can maintain the lines. The City has not yet accepted these easements." *Id.* More recently, the Park also refused to grant the City an easement to install a master meter at the Park entrance. Tr. 69:14–70:1.

While the City never accepted an easement that would require them to maintain the lines, Plaintiff argues that the City "acted like the owner of the lines." Pl.'s Closing Arg. 17, ECF No. 40. Until now, the City has always billed each tenant individually for their water usage. To do so, the City installed a water meter for each new home constructed in the Park and collected a system development charge for that installation. Tr. 63:12-16, 64:10-12. The City also charged a

connection fee whenever a tenant began water and sewer service. Tr. 79:19-24. City employees have also consistently entered the Park to read these water meters.[2] Tr. 17:24–18:10.

The City has always maintained responsibility for these water meters. When park maintenance manager Eddie Arthurs turned the valve on the individual meter at the park lake, a City employee told him "Do not touch our valve. Those are our water meters." Tr. 93:14-17. On another occasion, a city employee told Mr. Arthurs "The city is responsible for the water meters, and we're responsible for the water." Tr. 94:20–95:12. Contractor Joe Bird testified to a similar interaction with the City, when he was told to never touch the "city side" of the water meter. Tr. 102:20–103:5. While these interactions show that the City maintained responsibility for the water meters that they installed and read each month, at no point did the city assume ownership or responsibility for the underlying water lines within the Park.

There is no record of an accepted easement or any other transfer of ownership from the Park to the City. Plaintiff's predecessor-in-interest installed and paid for the water lines on the Park's private property. While the Park and the City may have discussed a possible easement or transfer of ownership, that transfer never happened. Plaintiff owns the water lines within the Park and is responsible for maintaining them.

## CONCLUSIONS OF LAW

Plaintiff argues that the City's plan to bill Plaintiff for the Park's entire water usage is a violation of both the Oregon and federal Contract Clauses. The Court disagrees.

Currently, Park tenants pay for their water by "direct billing." The provider, in this case the City, provides the water and bills the tenant directly; the Park, as the landlord, does not act as

---

[2] Any implied easement here is limited to the City's actual use. While City employees entered the private roads to read the meters, they never performed any maintenance or repairs on the water lines. Ex. 209 at 22; Ex. 210 at 56–57.

the provider. Or. Rev. Stat. § 90.560(1). In March 2019, the City informed Plaintiff of their intent, pursuant to Newport Municipal Code § 5.10.040, to install a master meter at the entrance of the Park and bill Plaintiff for the entire Park's water usage.[3] Plaintiff argues that because Oregon law would prevent them from unilaterally amending their rental agreements to recoup this new costs from their tenants, the City's plan violates the Contract Clauses.

**I. Federal Contract Clause**

The United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10. The Contract Clause applies not only to state laws but also municipal laws and ordinances. *Pure Wafer Inc. v. City of Prescott*, 845 F.3d 943, 950 (9th Cir. 2017).

The Ninth Circuit utilizes a "two-step test" to determine if a law violates the Contract Clause. *Apartment Ass'n of Los Angeles City, Inc., v. City of Los Angeles*, 10 F.4th 905, 913 (9th Cir. 2021) (citing *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018)). First, the Court looks to whether the law has "operated as a substantial impairment of a contractual relationship." *Id.* The Court considers "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id.* If the law is a substantial impairment, the Court "must determine whether the law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Id.* (cleaned up).

*Substantial Impairment*

Under the current rental agreements, tenants at the Park pay the city directly for their water usage. *See, e.g.*, ex. 4 at 5. Tenants also agree to pay for all outside services, including

---

[3] The City subsequently installed the master meter but has not yet changed the billing scheme.

5 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

water and sewer, that are provided for their space. *See, e.g.*, ex. 4 at 5. Failure to pay for water is a violation of the Lease Agreement and is cause for termination of the tenancy. *See, e.g.*, ex. 4 at 11.

Under the City's proposed master meter plan, the City would no longer bill teants for their water usage, but would instead bill the Park. This would increase the Park's overhead cost and, Plaintiff argues, undermine their contractual bargain with tenants and interfere with their reasonable expectations.

As noted above, the current billing structure is "direct billing." For Plaintiff to recoup the new costs of the City's plan, the Park would need to implement "submeter billing." Under "submeter billing," the City would provide water to the Park, the Park would provide water to tenants, and the Park would bill tenants for their individual water usage by using a submeter that measures the water actually provided to the space. Or. Rev. Stat. § 90.560(7). Under both direct and submeter billing, tenants only pay for the water they use; the only difference is in who tenants pay.

Oregon law shows a clear preference for direct or submeter billing. Manufactured home parks with 200 or more spaces must use direct or submeter billing for water. Or. Rev. Stat. § 90.578(1). Oregon law also allows landlords to unilaterally amend rental agreements to change from rent-included or pro rata billing to submeter billing. Or. Rev. Stat. § 90.574(1). However, as Plaintiff notes, Oregon law does not explicitly allow the Park to unilaterally amend their rental agreements to change from direct to submeter billing. Plaintiff argues "Longview cannot ensure that it will be able to recoup the charges that it would have to pay the City for all of its tenants' water usage." Pl.'s Closing Arg. 5.

6 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff argues that the extra cost would represent 17% of the Park's gross income. Pl.'s Closing Arg. 5. The Park currently has 177 spaces, with an average monthly rent of $600 per space. Tr. 8:1-5, 25:9-11. Each tenant pays around $100 per month for water and sewer usage. Tr. 25:6-8, 80:25–81:2. However, as Tim Gross, the former Public Works Director for the City of Newport testified, the cost under the master meter plan would be less that the total paid by each tenant every month. Nearly half of each tenant's bill is the combined "base fees" for water ($20.79) and sewer ($27.88). Tr. 66:-16. With a master meter, the base fee for water for the entire Park would be $250.45; for sewer it would be $32.15. Tr. 67:9-14. Mr. Gross testified that the average monthly total billed for all water usage at the Park is $16,228.96. Tr. 67:3-5. With a master meter, Mr. Gross estimated that the monthly bill to the Park would be $9,767.24. Tr. 67:16-19. In essence, switching to a master meter would save $6,461.72 monthly. Tr. 67:18-19.

The Court concludes that this extra cost is not a substantial impairment of Plaintiff's contracts with their tenants. The Court also concludes that the Park may recoup this cost from tenants.[4] Oregon's Residential Landlord Tenant Act is designed to protect tenants. Because the City's proposed plan would save tenants money, the Court finds that a switch from direct to submeter billing would be equally protective of tenants' rights.[5]

*Significant and Legitimate Purpose*

Even if the City's plan were a substantial impairment of the Park's contracts, the Court also concludes that the municipal ordinance, as applied, is "an appropriate and reasonable way to

---

[4] Because the current Lease Agreements require tenants to pay water and sewer charges or risk termination of their tenancy, tenants who do not pay the water and sewer charges billed by the Park would also be subject to termination of their tenancy.

[5] The testimony of Tom Turner, a resident of the Park, supports this. While Mr. Turner is "not real fond of changing things," he would be happy if his water bill were less, even if it meant the Park billed him instead of the City. Tr. 83:2-10.

7 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

advance a significant and legitimate public purpose." *Apartment Ass'n of Los Angeles City*, 10 F. 4th at 913.

Mr. Gross's testimony shows that the City had two reasons for the proposed change to a master meter. Tr. 60:5-11. The City wants to ensure that water is not lost within the private system; the City also wishes to save money. *Id.*

Water conservation is a significant and legitimate public purpose. With the master meter, the City "can determine how much water is leaking out of the system." Tr. 62:9-21. Without a master meter, the City "couldn't guarantee that [the Park was] maintaining the system appropriately, nor could [the City] guarantee that they weren't opening fire hydrants and using water." Tr. 68:16-23. The master meter ensures that all water used within the park is accounted and paid for.

Financial savings – both for the City as well as the Park tenants – is also a significant and legitimate public purpose. Plaintiff argues that "pure financial gain is not a legitimate public purpose." Pl.'s Closing Arg. 3. However, as Plaintiff acknowledges, this is only a concern when the government entity is party to the impaired contract. *Apartment Ass'n of Los Angeles City*, 10 F. 4th at 913 ("A heightened level of judicial scrutiny is appropriate when the government is a contracting party. But when the government is not party to the contract being impaired, 'courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.'") (internal citations omitted). Here, the City determined that it would be less expensive to put in one master meter at the entrance to the Park instead of replacing all the individual meters. Tr. 62:1-8. The Court also notes that while the upfront cost to the City is less, the City would also make less revenue monthly under this system. Overall, the Park tenants would be the primary beneficiaries of the cost savings identified by the City.

8 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

Installing the master meter and billing the Park for all water used is an appropriate and reasonable way to achieve these purposes.

## II. Oregon Contract Clause

Oregon's Contract Clause provides "No . . . law impairing the obligation of contracts shall ever be passed." Or. Const. Art. I, section 21. The Court considers (1) whether there is a contract; (2) the terms of the contract; (3) the obligations these terms require; and (4) whether the state has impaired an obligation of that contract. *Moro v. State*, 351 P.3d 1, 19 (Or. 2015).

The Lease Agreements between the Park and its tenants are indisputably contracts. The terms of the contracts include the lease provisions that tenants pay directly for their water and sewer usage. The terms obligate tenants to pay for their water or sewer usage or risk termination of their tenancy. The City's master meter plan does not change the tenants' obligation to pay for their water and sewer usage, even if they must instead pay the Park instead of the City and therefore does not violate the Oregon Contract Clause.

## CONCLUSION

Based on the testimony and exhibits presented in this case, the Court concludes that Defendant City of Newport has not violated the federal Contract Clause or the Oregon Contract Clause. The Court also concludes that the water lines within the Park are owned by Plaintiff Longview Hills.

DATED this 6th day of September, 2022.

                                                           _____/s/ Michael J. Mcshane_____
                                                             Michael J. McShane
                                                         United States District Judge